**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| SUFFOLK ADMINISTRATIVE SERVICES, LLC, PROVIDENCE INSURANCE COMPANY, I.I., PROVIDENCE INSURANCE PARTNERS, LLC, and ANJO, LLC, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Civil  No. |
| UNITED STATES DEPARTMENT OF LABOR, EUGENE SCALIA, *in his official capacity as Secretary of the United States Department of Labor*,  and UNITED STATES OF AMERICA, | ) ) ) ) ) ) | _____ |
| Defendants. | ) ) | |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**TO THE HONORABLE COURT:**

COME NOW Plaintiffs, Suffolk Administrative Services, LLC ("SAS"), Providence Insurance Company, I.I. ("PIC"), Providence Insurance Partners, LLC ("PIP"), and Anjo, LLC ("Anjo") and file this Verified Complaint for Declaratory and Injunctive Relief against Defendants United States Department of Labor ("DOL"), Eugene Scalia, in his official capacity as Secretary of the United States Department of Labor, and shows the Court as follows:

## INTRODUCTION

1.      Plaintiffs sought guidance from DOL to ensure that a proposed business structure to provide a novel way for companies to provide access to health coverage to their personnel and recruits complied with applicable law. Plaintiffs never approached this novel structure with a "catch us if you can" philosophy. Rather, Plaintiffs literally "walked through the front door" of DOL seeking its guidance and view on the applicable law before implementing it. Plaintiffs relied in good faith on the unequivocal representations and guidance of DOL officials regarding the novel concept. For this, DOL has been punishing Plaintiffs with a retaliatory "investigation."

2.      On November 8, 2018, LP Management Services, LLC ("LPMS"), filed a formal Advisory Opinion Request ("2018 Request") with the United States Department of Labor ("DOL") seeking guidance on whether a proposed health benefit plan ("Plan") was a lawful single employer health plan under the Employee Retirement Income Security Act ("ERISA"). A true and correct of the 2018 Request is attached hereto as Exhibit 1.

3.      The structure of the Plan was developed by Alexander Renfro ("Mr. Renfro"), the Chief Legal Officer of PIP and an officer of Anjo, SAS and PIC. Mr. Renfro is a benefits attorney licensed in the State of Tennessee. Mr. Renfro received a juris doctor from Southern Methodist University Dedman School of Law, and a certificate in employee benefits, as well as an LLM in taxation from Georgetown University Law Center.

4.      Mr. Renfro, as attorney for LPMS, was the principal author of the 2018 Request. The 2018 Request detailed the legal and factual basis for application of ERISA to the Plan building upon the previously recognized concept under ERISA of "working owners." Given the novel nature of the structure applicable to limited partnerships, LPMS sought guidance from DOL with respect to four issues, seeking confirmation from DOL that:

a.  A single-employer self-insured group health plan sponsored by a limited partnership is an "employee welfare benefit plan" within the meaning of ERISA § 3(1).

b.  A single-employer self-insured group health plan sponsored by a limited partner is a "group health plan" within the meaning of Part 7 of Subtitle B of Title I of ERISA ("Part 7").

c.  The limited partners participating in the limited Partnership's single-employer self-insured group health plan are "participants" within the meaning of ERISA Section 3(7).

    d.  The single-employer self-insured group health plan sponsored by the limited partnership is governed by Title I of ERISA.

5.     On January 15, 2019, and on February 27, 2019, Mr. Renfro revised the 2018 Request culminating in a final revised request ("Revised Request") to include additional factors and legal arguments for consideration by DOL. A true and correct copy of the Revised Request is attached hereto as Exhibit 2.

6.     As noted in the Revised Request, LPMS sought to implement this Plan structure through several limited partnerships for which LPMS would act as general partner (the "Partnership Plans").

7.     SAS is a Puerto Rican limited liability company with principal offices located in Guaynabo, Puerto Rico, providing benefits consulting and vendor management company providing compliance assistance to employers located in the United States mainland to implement, administer, and maintain self-insured group health plans. In addition to traditional benefits administration services, SAS provides other services including ERISA compliance advice, Affordable Care Act compliance advice, advice on local or federal wage ordinance provisions, and vendor management to employers with self-insured group health plans. SAS provides such benefits consulting and vendor management services to employers implementing both traditional self-insured group health plans and the novel Partnership Plan structure.

8.     PIC is Puerto Rican international insurance company with principal offices located in San Juan, Puerto Rico, providing reinsurance for employers located in the United States mainland implementing both traditional self-insured group health plans and the novel Partnership Plan structure.

9.     Anjo is a Tennessee limited liability company that does not provide any services of any kind to any individual or entity relating to ERISA or group health plans, be they fully insured or self-insured. Anjo does not participate in any ERISA plans of any nature nor does it act as a vendor to any ERISA plan. Its only involvement in any of the issues relevant to this Complaint is its connection to Mr. Renfro.

10.    PIP is a Tennessee limited liability company providing consultation and advice on structuring reinsurance coverage for employers implementing both traditional self-insured group health plans and the novel Partnership Plan structure.

11.    SAS, PIC, and PIP all expended resources, time, and expertise to develop products tailored to assist employers seeking to implement the novel Partnership Plan structure.

12.    On February 21, 2019, several state Attorneys General sent DOL a letter encouraging them to act on the Revised Request because the applicability of ERISA to the Plan heavily impacts the economic and public health interests of the states ("AG Letter"). A true and correct copy of the AG Letter is attached hereto as Exhibit 3.

13.    DOL has never provided any response to the AG Letter.

14.    For more than one year, DOL provided no formal response to the Revised Request, forcing LPMS and Data Marketing Partnership LP ("DMP"), a limited partnership for which LPMS serves as general partner, to file suit in the United States District Court for the Northern District of Texas, *Data Marketing Partnership, LP, and LP Management Services, LLC v. Department of Labor*, Civil Case 4:19–cv–00800–O (the "AO Case").

15.    While DOL refused to make any formal response to the AO Request and AG Letter, and in so doing violated the terms of its own published policies for AO review and response, DOL simultaneously opened a retaliatory investigation against Anjo, targeting the Partnership Plans,

Plaintiffs, and several related organizations in a transparent effort to provide a post hoc explanation for their lack of action on the Revised Request, and with the transparent aim to chill the speech and association rights of Plaintiffs and those organizations in violation of the First and Fifth Amendments to the United States Constitution (the "Anjo Investigation").

16.    On January 24, 2020, six business days before its response was due in the AO Case, and more than fourteen months after the Request had been duly and properly filed, DOL finally issued an adverse action response ("Response") to the AO Request. A true and correct copy of the AG Letter is attached hereto as Exhibit 4.

17.    The six-page Response was arbitrary and capricious, containing almost no legal analysis by DOL and, in direct violation of ERISA Procedure 76-1, was based on erroneous facts and misstatements of the proposed business structure.

18.    Because the Response contained so many factual misstatements and so little legal analysis, it appeared to be just another calculated effort by DOL to hamper implementation of the novel structure at the expense of Plaintiffs' constitutional rights and the rights of employers, limited partners, and employees seeking the benefits of the Partnership Plans and similar plans providing affordable access to health care.

19.    In light of the adverse Response, the AO Case continued.

20.    LPMS and DMP eventually received relief when the court granted its Motion for Summary Judgment setting aside DOL's Response (*See*, AO Case at Doc. 37).

21.    This lawsuit seeks relief from the ongoing retaliatory and unconstitutional acts of DOL related to their purported Anjo Investigation.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 2201 (Declaratory Judgment Act), 29 U.S.C. § 1132(k), and 5 U.S.C. § 702 (Administrative Procedure Act).

23.     The United States has waived its sovereign immunity in this action pursuant to 5 U.S.C. § 702, 28 U.S.C. § 2201, and 29 U.S.C. § 1132(k).

24.     SAS is a Puerto Rican limited liability company with a principal place of business located at Metro Office Park, 2 Calle 1, Suite 400, Guaynabo, PR 00968. SAS is subject to the jurisdiction and venue of the Court.

25.     PIC is a Puerto Rican international insurer with a principal place of business located at 954 Ponce de Leon Avenue, Miramar Plaza, Suite 802, San Juan, PR 00907. PIC is subject to the jurisdiction and venue of the Court.

26.     PIP is a Tennessee limited liability company with a principal place of business located at 3200 West End Ave, Suite 500, Nashville, TN 37203. PIP voluntarily submits itself to the jurisdiction and venue of the Court.

27.     Anjo is a Tennessee limited liability company with its business office located at 5032 South Bur Oak Place, Sioux Falls, SD 57108. Anjo voluntarily submits itself to the jurisdiction and venue of the Court.

28.     Venue is proper in this district pursuant to the express provisions of ERISA, 29 U.S.C. §§ 1132(k).   Venue is also proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (e)(1). Defendants are United States agencies or officers sued in their official capacities; Defendants reside in this District; and a substantial part of the events giving rise to this action occurred in this District.

## PARTIES

29.     Plaintiffs are aggrieved by the unreasonable, retaliatory investigation into all businesses engaged in providing services to the Partnership Plans. This investigation, and the vindictive manner in which it has been carried out over the past 18 months, evinces a clear design to silence Plaintiffs and otherwise inflict damage upon Plaintiffs by any and all means available to DOL. Notably, and as further described herein, DOL is violating its own procedures for the conduct of such investigations. Accordingly, Plaintiffs have standing to bring this action pursuant to 29 U.S.C. § 1132(k).

30.     Defendant DOL is an agency of the United States government and has responsibility for implementing and enforcing portions of ERISA. It is an "agency" under 5 U.S.C. § 551(1).

31.     Defendant Eugene Scalia ("Secretary") is the Secretary of Labor and is sued solely in his official capacity.

32.     Defendant the United States of America is sued as permitted under 5 U.S.C. § 702.

## FACTS

33.     This case arises out of DOL's blatant retaliation against the Plaintiffs for exercising their constitutionally protected rights and, in doing so, relying on the unequivocal representations and guidance of DOL officials regarding a business structure which provided the personnel and prospective recruits of its client companies with a novel way to access private health coverage.

### PETITIONING THE GOVERNMENT

34.     In October, 2018 (the "October Meeting"), the Plaintiffs met with the United States DOL in an effort to be transparent with the relevant regulatory agencies that would interact with the Plan, its participants, and its sponsors.

35.    In attendance at the October Meeting and representing the interests of the Plaintiffs was Alex Renfro, among others.

36.    In attendance at the October Meeting and representing the interests of DOL was Preston Rutledge, then Assistant Secretary of Labor for the Employee Benefits Security Administration (EBSA), the division of DOL responsible for ERISA compliance and interpretations.

37.    By all accounts, the October Meeting was very successful. Plaintiffs' representatives explained the plan structure to DOL representatives and provided high level detail of the goals of the plan and the business structure.

38.    At the October Meeting, Assistant Secretary Rutledge told representatives from Plaintiffs that an Advisory Opinion Request was the best route to ensure approval of the Plan by DOL, which Mr. Renfro promptly submitted.

39.    The parties parted ways with an explicit agreement to continue discussions so that DOL could be comfortable approving the Plan as ERISA compliant.

40.    In the weeks and months that followed, occasional informal conversations continued between representatives of Plaintiffs and representatives of DOL in anticipation that a more formal meeting or exchange would soon follow.

41.    Assistant Secretary Rutledge verbally expressed to Christopher Condeluci, an advisor to Plaintiff SAS, that he didn't see why DOL needed to issue an Advisory Opinion, because ERISA already allows partners to be treated as employees for purposes of plan eligibility.

42.    During this conversation, Assistant Secretary Rutledge told Mr. Condeluci that LPMS should "just do it," meaning implement the Plan.

43.     As a result of this and other advice from DOL, the 2018 request was slightly revised and resubmitted to DOL in early 2019, culminating in the final Revised Request submitted on or about February 26, 2019.

44.     Simultaneously, and in reliance on Assistant Secretary Rutledge's statements, LPMS began accepting limited partners into DMP and formed the Plan for the same.

45.     At or around this time, seven sitting state Attorneys General sent a letter to then DOL Secretary Acosta, stressing the urgency of the public health problem that the LPMS structure addressed, and requesting expedited consideration of the Revised Request.  DOL made no formal response to any of these submissions.

46.     Instead, during a meeting on March 6, 2019, then DOL Chief of Staff Nicholas Geale told a group of representatives from the Plaintiffs and interested states, including Mr. Renfro, Mr. Condeluci, and Louisiana Attorney General, Jeff Landry (the lead signatory to the aforementioned letter) that although the Partnership Plan structure was "ingenious" and that he "wished he'd thought of it," DOL could not respond to the Revised Request due to perceived conflict with litigation around DOL's new Association Health Plan ("AHP") rule.

47.     At one point during the meeting, representatives from DOL became animated and said that if the Plaintiffs' group disagreed about DOL's priorities, they should "take it up with the White House," which had instructed DOL not to approve the Revised Request.

48.     In a subsequent meeting between Mr. Condeluci and Mr. Geale at DOL, Mr. Geale proposed that if LPMS would withdraw its AO request (and/or cease pressing for an answer to it), Mr. Geale would "look [LPMS representatives] in the eye" and promise that DOL would not investigate or otherwise interfere with any LPMS-managed partnership plans.

49.     Representatives for Plaintiffs attempted to explain to Mr. Geale that even assuming DOL refrained from investigating or hampering DMP, the fifty separate state insurance regulators could pose significant and indefinite regulatory burdens on DMP through investigations and rulings of their own. It simply was not practical or advisable to rely on handshake promises with the looming threat of politically motivated investigations by individual states in the absence of an ERISA ruling.

50.     Several staff members of DOL were present at this meeting, including, upon information and belief, members of the enforcement division of DOL and Joseph Canary, who is the Director of the Office of Regulations and Interpretations and the purported author of the adverse Response.

51.     It turns out Plaintiffs' reticence to accept handshake deals with DOL was well-founded, because once Plaintiffs declined DOL's offer, DOL embarked on a fishing expedition through what can only be described as a vindictive and retaliatory investigation.

52.     Plaintiffs believe the first subpoena related to the Anjo Investigation was issued by DOL shortly after the earlier described meeting in which Joseph Canary was in attendance, thus beginning the investigation into Anjo despite DOL having *never* posed a single written question or other formal response to the Revised Request or the AG Letter. This lack of interaction on the Revised Request is highly unusual for DOL's advisory opinion process, as questions from DOL to the requestor routinely occur following submission of an advisory opinion request.

53.     DOL issued subpoenas to almost every key entity doing business with Anjo, SAS, or PIP, including some businesses that have nothing whatsoever to do with any partnership plans.

54.     The clear intent of the investigation and the subpoenas is to intimidate Plaintiffs and their partners, and to stifle their speech and associational rights, while inflicting as much economic damage on Plaintiffs as possible.

55.     The maltreatment by DOL notwithstanding, Plaintiffs have complied with all requests, and encouraged their partners to do the same.

56.     But such compliance comes at a price, having collectively cost hundreds of thousands of dollars and immeasurable time and energy to date (precious time diverted from serving clients and improving all aspects of Plaintiffs' businesses and those of Plaintiffs' clients, including data collection and marketing).

57.     Defendants' actions have also prevented Plaintiffs from growing their business, because they have naturally been obliged to disclose the investigation to all potential new distribution sources, who have all understandably said, "Call us when it's over." Additionally, current vendors and distribution partners of Plaintiffs have either reduced or terminated relations with Plaintiffs as a result of receiving subpoenas in the Anjo Investigation.

58.     Immediately before the initiation of the investigation of Anjo and since that time, DOL rapidly changed course in its dealings with the Plaintiffs regarding the propriety of the Partnership Plans as well.

59.     As the investigation got under way, a long-scheduled June 2019 meeting between LPMS, Plaintiffs' representatives, and DOL was abruptly pushed back to July.

60.     When the scheduled meeting finally occurred, it lasted only ten minutes and the representatives from DOL demonstrated little interest in continuing discussions with LPMS, Plaintiffs' representatives about the Partnership Plans, or the Revised Request.

61.     During this time-period, DOL subpoenaed more than ten entities related to LPMS and Plaintiffs as part of the Anjo Investigation. True and correct copies of these subpoenas are attached hereto as Exhibit 5.

62.     The subpoenas from DOL are ostensibly issued pursuant to 29 U.S.C. § 1134(a)(1), which grants EBSA the authority to determine whether someone is violating or about to violate ERISA.

63.     Nevertheless, this explanation is especially curious since these subpoenas were issued within weeks of the adverse Response issued by DOL that explicitly presumed the Partnership Plans are not covered by ERISA. Despite this Response, DOL continued to pursue its amorphous, ill-defined, and indefinite "investigation" into Anjo.

64.     The Response, in fact, expressly states, "it is the Department's view that the proposed [Partnership Plan] health benefit programs would not be single-employer group health plans ***or ERISA plans at all.***" [Emphasis Added].

65.     In the AO Case, the District Court rejected DOL's view.

66.     DOL is attempting to have it both ways. On the one hand, they state that the Partnership Plans covered by the Revised Request are not subject to ERISA, and yet they are investigating Anjo and others under their authority to ensure compliance with ERISA. Now that the District Court in the AO Case has resoundingly rejected this misguided view of DOL, it has failed to abandon (or even curtail) its retaliatory investigation of Anjo. This is emblematic of the abusive, duplicitous, and unconstitutional conduct DOL has subjected Plaintiffs to for well over a year.

67.     Plaintiffs welcomed DOL oversight from the beginning – literally walking in its front door to seek guidance on the novel Partnership Plans before implementing them. However, DOL oversight must still comply with the United States Constitution and ERISA. DOL oversight does not extend to baseless, retaliatory fishing expeditions.

68.     DOL issued the subpoenas to stifle the ability of Plaintiffs to continue their services with respect to the Partnership Plans, to hinder or altogether block the right of the partners to join together and freely associate with one another, to hinder or altogether block the right of Plaintiffs'

customers to join together and freely associate with one another and/or with Plaintiffs, and in response to LPMS' petition to the government through the 2018 Request and Revised Request.

69.   Having been thwarted by the District Court's ruling in the AO Case, DOL is using its abusive investigatory tactics to achieve its desired end by other, unlawful means.

70.   DOL's efforts have been highly successful. Indeed, the effect of this retaliatory investigation and the associated subpoenas has been to thwart the ability of Plaintiffs to refine and implement the Partnership Plan, as well as conduct their ordinary course of business with respect to more traditional group health plans.

71.   The very existence of the seemingly interminable investigation has understandably both frightened potential Partnership Plan vendors and dissuaded them from providing services to the Partnership Plans.

72.   The very existence of the seemingly interminable investigation has understandably both frightened potential Partnership Plan vendors and dissuaded them from providing services to the Partnership Plans and frightened potential vendors and partners from conducting business with Plaintiffs both generally and with respect to Partnership Plans. Additionally, existing vendors of Plaintiffs have reduced or terminated relations with Plaintiffs as a result of the retaliatory Anjo Investigation.

73.   Such an outcome threatens the viability and longevity of the Partnership Plans and the limited partnerships sponsoring them, because the success of such limited partnerships depends on attracting many partners, as well as Plaintiffs' viability as going concerns, since their ability to conduct business at all has been stymied by the loss of goodwill and reputation among existing and potential partners while the cost of complying and attempting to respond in good faith to the retaliatory Anjo Investigation continues.

74.    The retaliatory investigation has inhibited the ability of Plaintiffs, the clients they service, their clients' plan participants, potential plan participants, and Plaintiffs' customers and business partners to associate with one another on the basis of their political and protected viewpoints.

75.    This abuse must stop.

### DOL CONTINUES TO DISREGARD ITS OWN RULES

76.    On May 19, 2020, the President signed Executive Order 13924, *Executive Order on Regulatory Relief to Support Economic Recovery* ("EO")*.*

77.    Because the President is the head of the Executive Branch, the executive agency leaders, including the Secretary of the Department of Labor, are bound by the terms of the EO.

78.    Understanding this, Paul J. Ray, Administrator for the Office of Information and Regulatory Affairs, instituted a Memo implementing Section 6 of the EO, at the direction of the Director of the Office of Management and Budget, Russel T. Vaught ("Memo"). A true and correct copy of the Memo is attached hereto as Exhibit 6.

79.    Section 6 of the EO directs heads of all agencies to "consider principles of fairness in administrative enforcement and adjudication." To effect this policy, the Office of Information and Regulatory Affairs suggested implementation of a number of practices and procedures, many of which DOL violate by continuing their retaliatory investigation into Plaintiffs.

80.    For example, the Memo reiterates many of the directives contained in the EO, stating, "[a]dministrative enforcement should be prompt and fair."

81.    It further instructs agencies that, "[a]dministrative enforcement should be free of improper Government coercion." Importantly, it emphasizes, ***"[r]etaliatory or punitive motives, or the desire to compel capitulation***, should not form the basis for an agency's selection of targets or investigations ..." (emphasis added).

82.    Defendants do not comply with these basic tenants of due process, fairness, and justice highlighted by the Memo and commanded by the EO.

83.    Moreover, the Memo suggests certain practices for the conduct of otherwise appropriate investigations. Specifically, the Memo instructs agencies to "ensure that members of the regulated public are not required to prove a negative to prevent liability," and to "consider applying the rule of lenity in administrative investigations…"

84.    The Memo further instructs that "regulations should require investigating staff to either recommend or bring an enforcement action, or instead cease the investigation…"

85.    Finally, the Memo provides that "[a]dministrative adjudicators should operate independently of enforcement staff on matters within their areas of adjudication."

86.    The content of this Memo and the EO that inspired its creation, coupled with the aforementioned facts, show not only that the Defendants' investigation is nothing more than a thinly veiled attempt to silence the speech and association rights of Plaintiffs, but also a blatant violation of the direction of the President expressed in the EO.

87.    Beyond the terms of the EO and the implementing Memo, DOL also failed to follow its own procedures, specifically ERISA Procedure 76-1.

88.    After submission of the Revised Request, DOL never requested any follow up information from LPMS and it never contacted any representative of LPMS to confirm its understanding of the facts presented in the Revised Request. This failure led to DOL's flawed understanding of the relevant facts.

89.    Crucially, DOL applied little, if any, of the relevant law discussed in the Revised Request to the facts presented. The failure led to DOL's legally defective Response and, ultimately, the District Court's rejection of DOL's position.

90.     Further, DOL relied on speculative facts even though ERISA Procedure 76-1 bars such reliance. Specifically, Section 10 of Procedure 76-1 states "The opinion assumes that all material facts and representations set forth in the request are accurate, and applies only to the situation described therein."

91.     In the Response, however, DOL did not accept as true even the most basic facts presented in the Revised Request.

92.     For these violations of ERISA Procedure 76-1, among other reasons, the District Court in the AO Case found DOL's conduct relative to the Response to be arbitrary and capricious.

93.     Rather than seek clarification, submit follow up questions to the Revised Request, or follow its own ERISA Procedure 76-1, DOL initiated the retaliatory Anjo Investigation, which is not a permitted form of follow-up listed in the Procedure.

94.     This Court should not permit DOL to run roughshod over its own policies and over Constitutional restraints that exist to safeguard American citizens from the considerable power of the administrative state.

**DOL REFUSES TO PROVIDE PLAINTIFFS INFORMATION ON SCOPE AND PURPOSE OF INVESTIGATION**

95.     On November 6, 2020, counsel for Plaintiffs sent a letter to all known DOL officials involved in the investigation in an effort to seek clarity on the purpose, scope, and need for the Anjo Investigation.

96.     As noted in the November 6, 2020, letter, Plaintiffs have all cooperated with DOL in the Anjo Investigation at great cost in legal fees and lost productivity. Plaintiffs noted that each is a small business with limited personnel resources available to respond to the subpoenas. Despite these limited resources, Plaintiffs and associated entities implementing the Partnership Plans have

produced nearly 20,000 documents comprising over 200,000 pages in response to the various DOL

subpoenas issued in furtherance of the Anjo Investigation.

97.    Having expended considerable resources in legal fees and lost productivity cooperating

with DOL, Plaintiffs requested that DOL provide responses to reasonable requests for clarifying

information on the Anjo Investigation, posing the following questions:

> 1. Based on the information provided to date in the Anjo
> Investigation, have any of our clients violated or, in your informed
> opinion, are they about to violate any provision of Title I of ERISA
> or any regulation or order thereunder?
>
> a. If so, which clients?
>
> b. If so, which specific provision of Title I of ERISA or any
> regulation or order thereunder are they suspected of violating
> or being "about to violate"?
>
> 2. Given that the Anjo Investigation has now continued for over
> fifteen months, what is the period within which DOL intends to
> either recommend or bring an enforcement action for any such
> alleged violation?
>
> a. If DOL cannot provide this period, why not?
>
> b. If DOL can provide this period, when will it provide this
> information to our clients?

98.    Regardless of whether DOL desired to respond to the above reasonable requests, Plaintiffs

sought a path to reach a resolution to the Anjo Investigation without needing to resort to litigation.

Specifically, Plaintiffs offered to engage in a constructive dialogue with DOL around the following

suggestions:

> •     The scope and concerns of the Anjo Investigation will be
> explicitly defined by DOL.
>
> •     The Anjo Investigation will hereafter be limited to SAS, PIP,
> PIC, other vendors to the Partnership Plans, and entities sponsoring
> the Partnership Plans, and all other entities will receive formal
> notice that they are not targets of the Anjo Investigation.
>
> •     A target date for formal conclusion of the Anjo Investigation
> will be established and agreed to by the Parties.

• Our clients will voluntarily provide annual reporting on the claims history and average claims trust account balances for any Partnership Plans to DOL every March, beginning March 2021, for 3 years.

• If any of the Partnership Plans modify their plan documents, trust documents, or summaries of benefits and coverage, and SAS, PIP, or PIC are still servicing said organization(s), then copies of these modifications will be provided to DOL within thirty (30) days of their effective date.

• Mr. Renfro will sit down with EBSA and DOL Solicitor's Office at their convenience to describe the model of the Partnership Plans and application of applicable ERISA treatment, including any consumer protection enhancements implemented by the LPs at the recommendation of SAS, PIP, and PIC.

99. As with all of Plaintiffs prior interactions with DOL, the November 6 letter was delivered in good faith seeking to develop a working framework between Plaintiffs and DOL within which DOL could be fully satisfied that the implementation of the Partnership Plans complies with ERISA and allow Plaintiffs to continue their business within the requirements of ERISA.

100. Rather than accept the good faith offer to engage in constructive dialogue on how best to ensure ERISA compliance, satisfy DOL's concerns (assuming there were any legitimate concerns at the onset of the Anjo Investigation) that led to the amorphous and undefined Anjo Investigation, and create a structure for future interactions ensuring Plaintiffs' ERISA compliance, DOL rejected out of hand Plaintiffs' overtures.

101. On December 14, 2020, Katrina Liu, Trial Attorney, Office of the Solicitor of DOL (also an attorney representing DOL in the AO Case), responded on behalf of DOL with a letter essentially noting DOL's "ample authority to conduct its investigation in order to determine whether ERISA violations have or are about to occur." In short, DOL was "not in a position to provide the specific information you seek regarding the timing and scope" of the Anjo Investigation.

102.    If there is or ever was a legitimate basis for the Anjo Investigation, DOL refuses to state what it is.

103.    On December 30, 2020, Plaintiffs responded to Attorney Liu with citations to authority showing that, while broad, DOL's investigatory authority is not as limitless as portrayed in her letter of December 14. Plaintiffs closed their reply letter with yet another request that DOL reconsider its inexplicable approach to the Anjo Investigation. Plaintiffs noted "In the midst of the harsh economic impacts of this pandemic on all small businesses in America, I would hope DOL would reconsider the position taken in your letter." Despite the obvious damage that the DOL is causing, DOL has not reconsidered its position.

104.    True and correct copies of the November 6, December 14, and December 30 letters are attached hereto as Exhibit 7.

**CAUSES OF ACTION**

**COUNT I**
**(VIOLATIONS OF THE FIRST AMENDMENT)**

105.    The preceding allegations are all incorporated by reference herein as if fully set out.

106.    The First Amendment protects private speech from government interference or restriction when the specific motivating ideology, opinion, or perspective of the speaker is the rationale for the restriction.

107.    Plaintiffs' speech, via its submission of the 2018 Request and Revised Request, is entitled to First Amendment protection.

108.    Defendants unlawfully deprived Plaintiffs of their First Amendment rights in connection with and arising from their Advisory Opinion Requests by launching a retaliatory investigation into an entity, Anjo, for the sole purpose of harassing Plaintiffs and the entities that were subpoenaed due to their partnership or other relationship with the Partnership Plans; issuing unconstitutional and overly

intrusive requests for information via the subpoena process; delaying the processing of LPMS's Advisory Opinion Request on the basis of DMP's viewpoints and in violation of ERISA Procedure 76-1, the EO and 29 U.S.C. § 1134(b); seeking to undermine the duly issued order of a Federal Court determining that the Partnership Plans are explicitly legal constructs under ERISA, and failing to prevent such conduct by DOL employees and agents under their direct supervision and control while they were fully aware of such unconstitutional misconduct.

109.    In targeting Plaintiffs' business associates and partners for additional and illegitimate scrutiny, Defendants engaged in impermissible viewpoint-based discrimination in violation of established First Amendment principles, while acting under color of federal authority in their respective official DOL positions.

110.    Defendants' conduct directly infringed upon Plaintiffs' speech by inhibiting their ability to engage in effective advocacy and other expressive activities.

111.    Defendants' conduct constitutes retaliation against Plaintiffs on the basis of the actual or perceived viewpoint of their protected speech.

112.    Defendants knew, or reasonably should have known, that their conduct would violate Plaintiffs' federal constitutional rights.

113.    Plaintiffs have no other adequate monetary remedy in court for Defendants' violations of their constitutional rights as complained of herein.

114.    Absent congressional direction otherwise, courts may grant injunctive relief against prospective harms.

## COUNT II
### (VIOLATIONS OF THE FIRST AMENDMENT – FREEDOM OF ASSOCIATION)

115.    The preceding allegations are all incorporated by reference herein as if fully set out.

116.    The First Amendment to the United States Constitution protects Plaintiffs' right to freely associate with others of their choosing for the purposes of engaging in protected speech.

117.    Plaintiffs and their partners and business affiliates are entitled under the First Amendment to freely associate with one another.

118.    Defendants unlawfully deprived Plaintiffs of their First Amendment rights in connection with and arising from their AO Request by launching a retaliatory investigation into an entity, Anjo, as a pretext to issue overly broad, intrusive subpoenas to Plaintiffs and any other vendor providing services to Partnership Plans, for the sole purpose of harassing Plaintiffs and the entities that were subpoenaed due to their servicing or other relationship with limited partnerships sponsoring Partnership Plans; issuing unconstitutional and overly intrusive requests for information via the subpoena process; delaying the processing of LPMS's Advisory Opinion Request on the basis of DMP's viewpoints and in violation of ERISA Procedure 76-1, the EO and 29 U.S.C. § 1134(b); seeking to undermine the duly issued order of a Federal Court determining that the Partnership Plans are explicitly legal constructs under ERISA, and failing to prevent such conduct by DOL employees and agents under their direct supervision and control while they were fully aware of such unconstitutional misconduct.

119.     Defendants, while acting under color of federal authority, infringed upon Plaintiffs' ability to freely associate for protected speech purposes with others of their choosing – including potential future limited partners, Partnership Plan participants, and Partnership Plan vendors.

120.    Defendants knew, or reasonably should have known, that targeting Plaintiffs and their partners and affiliates for additional and illegitimate scrutiny would violate Plaintiffs' federal constitutional rights.

121.    Plaintiffs have no other adequate monetary remedy in court for Defendants' violations of their constitutional rights as complained of herein.

122.    Absent congressional direction otherwise, courts may grant injunctive relief against prospective harms.

**COUNT III**
**(VIOLATIONS OF THE FIFTH AMENDMENT – EQUAL PROTECTION UNDER THE DUE PROCESS CLAUSE)**

123.    The preceding allegations are all incorporated by reference herein as if fully set out.

124.    The Fifth Amendment to the United States Constitution protects persons against the deprivation of life, liberty, or property without due process of the law and forbids the federal government from denying the equal protection of the laws.

125.    The Fifth Amendment to the United States Constitution guarantees persons the right to be free from illegal discrimination and selective viewpoint-based scrutiny and enforcement.

126.    Defendants unlawfully deprived Plaintiffs of their First Amendment rights in connection with and arising from their Advisory Opinion Requests by launching an investigation into an entity, Anjo, for the sole purpose of harassing Plaintiffs and the entities that were subpoenaed due to their relationship as sponsors of Partnership Plans or vendors to Partnership Plans; issuing unconstitutional and overly intrusive requests for information via the subpoena process; delaying the processing of LPMS's Advisory Opinion Request on the basis of DMP's viewpoints and in violation of ERISA Procedure 76-1, the EO and 29 U.S.C. § 1134(b); seeking to undermine the duly issued order of a Federal Court determining that the Partnership Plans are explicitly legal constructs under ERISA, and failing to prevent such conduct by DOL employees and agents under their direct supervision and control while they were fully aware of such unconstitutional misconduct.

127.    Defendants, while acting under color of federal authority, caused Plaintiffs to be treated differently than other similarly situated organizations filing AO Requests.

128.    The disparate treatment of Plaintiffs based on their viewpoints was a result of a discriminatory purpose on the part of Defendants.

129.    Defendants' disparate treatment of Plaintiffs based on their viewpoints is not rationally related to any legitimate governmental interest.

130.    Defendants knew, or reasonably should have known, that their conduct would violate Plaintiffs' federal constitutional rights.

131.    Plaintiffs have no other adequate monetary remedy in a court for Defendants' violations of their constitutional rights as complained of herein.

132.    Absent congressional direction otherwise, courts may grant injunctive relief against prospective harms.

## COUNT IV
### (VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT ("APA"))

133.    The preceding allegations are all incorporated by reference herein as if fully set out.

134.    The APA provides a cause of action for persons suffering a legal wrong from – or adversely or aggrieved by – actions or inactions of an agency of the United States or officers thereof acting in an official capacity.  5 U.S.C. § 702

135.    The APA requires the federal courts to: (1) compel agency action unlawfully withheld or unreasonably delayed and (2) hold unlawful and set aside agency action, findings, and conclusions found to be contrary to any constitutional right, power, privilege, or immunity.  5 U.S.C. § 706.

136.    The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702 in actions seeking relief other than money damages and stating a claim that an agency of the United States and/or officers thereof acted or failed to act in an official capacity.

137.    DOL is an agency of the United States of America for purposes of the APA.

138.     Defendants' unlawful and viewpoint-based discriminatory investigation into Plaintiffs' partners and affiliates and unconstitutional and intrusive requests for information unreasonably delayed DOL's final determinations of Plaintiffs' Revised Request.

139.     Defendants' perfunctory Response and simultaneous retaliatory investigation described herein – based solely on Plaintiffs' viewpoints – violates the United States Constitution, ERISA Procedure 76-1, 29 U.S.C. § 1134(b), and the continuing the investigation constitutes final agency actions having the force and effect of law that are contrary to Plaintiffs' federal constitutional rights to freedom of speech and freedom of association under the First Amendment and the equal protection of the laws under the Fifth Amendment.

140.     Defendants' demand that Plaintiffs, partnerships implementing the Partnership Plans, and business associates supporting the Partnership Plans respond to irrelevant, unlawful, unconstitutional, and overly intrusive requests for information issued by subpoena described herein is plainly contrary to the intent of Congress as expressed in ERISA and therefore, such action is not committed to agency discretion by law.  5 U.S.C. §701(a)(2).

## COUNT V
### (VIOLATIONS OF ERISA)

141.     The preceding allegations are all incorporated by reference herein as if fully set out.

142.     DOL's ongoing and interminable investigation is marked by repeated and intrusive subpoenas either to Plaintiffs, plan members, plan supporters, plan providers, plan vendors, or affiliates thereof.

143.     DOL's seemingly disparate issuance of subpoenas are, in reality, all targeting the same Partnership Plans and the entities which facilitated the Revised Request on their behalf.

144.     Many of the targets of the subpoenas are associated with or vendors to the Partnership Plans either by facilitating its existence or participating its benefits.

01939763-1

145.     DOL has not provided any reasonable cause for its repetitive and abusive subpoenas issued the Anjo Investigation.

146.     Indeed, the only explanation proffered by DOL is that it issuing the subpoenas pursuant to its authority to determine whether someone is violating or is about to violate ERISA.

147.     But this authority does not provide rights to issue subpoenas as retaliation for invoking ERISA Procedure 76-1.

148.     An order from this Court preliminarily and permanently enjoining the Defendants' unlawful conduct is the only adequate remedy available at law.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs demand judgment against Defendants and in favor of Plaintiffs as follows:

A.     That this Court declare that the conduct of the Defendants, while acting under color of federal authority, violated the constitutional rights of Plaintiffs;

B.     That this Court declare the conduct of the agency Defendants violated the Administrative Procedure Act;

C.     That this Court declare the conduct of the agency Defendants violated the Employee Retirement Income Security Act;

D.     That this Court issue a permanent injunction prohibiting all Defendants, and all those in active concert with them, from unlawfully targeting the Plaintiffs through its retaliatory investigation, immediately cease issuing new subpoenas related to the investigation to Plaintiffs, any affiliates, or potential partners or participants involved in the Partnership Plans; and an order quashing any active or pending subpoenas issued by Defendants to the Plaintiffs, its affiliates, or others related to the Anjo Investigation;

E.     Alternatively to the preceding prayer for relief, that this Court issue a permanent injunction prohibiting all Defendants, and all those in active concert with them, from unlawfully targeting the Plaintiffs through its retaliatory Anjo Investigation, immediately cease issuing new subpoenas related to the investigation to Plaintiffs, any affiliates, or potential partners or participants involved in the Partnership Plans unless and until Defendants (i) define in writing the scope and concerns of the Anjo Investigation, and (ii) either recommend or bring an enforcement action for any alleged ERISA violation by Plaintiffs; and an order quashing or suspending enforcement of any active or pending subpoenas issued by Defendants to the Plaintiffs, its affiliates, or others related to the Anjo Investigation unless and until Defendants (i) define in writing the scope and concerns of the Anjo Investigation, and (ii) either recommend or bring an enforcement action for any alleged ERISA violation by Plaintiffs;

F.     Award Plaintiffs their reasonable attorneys' fees, costs, and expenses associated with this action pursuant to 29 U.S.C. § 1132(g)(1) and 28 U.S.C. § 2412; and

G.     Award Plaintiffs such other and further relief as this Court deems necessary and proper.

**JURY DEMAND**

Plaintiffs demand trial by jury on all claims and issues so triable.

DATED: January 19, 2021

**O'NEILL & BORGES** LLC
250 Muñoz Rivera Avenue, Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*s/Antonio L. Roig-Lorenzo*
Antonio L. Roig-Lorenzo
USDC No. 207712
E-mail: antonio.roig@oneillborges.com

*s/Ana Margarita Rodríguez Rivera*
Ana Margarita Rodríguez Rivera
USDC No. 227503
E-mail: ana.rodriguez@oneillborges.com

*s/Daniel J. Perez-Refojos*
Daniel J. Perez-Refojos
USDC No. 303909
E-mail: daniel.perez@oneillborges.com

**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Telephone: (770) 434-6868
Fascimile: (770) 434-7376

*/s/Jonathan D. Crumly*
Jonathan Crumly (*Pro Hac Vice Pending*)
Georgia Bar No. 199466
Email: jcrumly@taylorenglish.com

*/s/Allen W. Nelson*
Allen W. Nelson (Pro Hac Vice *Pending)*
Georgia Bar No. 537680
Email: anelson@taylorenglish.com

*/s/Ann R. Schildhammer*
Ann R. Schildhammer (*Pro Hac Vice Pending*)
Georgia Bar No. 600290
Email: aschildhammer@taylorenglish.com

*/s/Bryan Jacoutot*
Bryan Jacoutot (*Pro Hac Vice Pending*)
Georgia Bar No. 668272
Email: bjacoutot@taylorenglish.com

*Counsel for Plaintiffs*