*The Law Office of Alexander Renfro*

November 8, 2018

**Submitted Electronically via email**

Joseph Canary
Director, Office of Regulations and Interpretations
U.S. Department of Labor
Employee Benefits Security Administration
Office of Regulations and Interpretations
200 Constitution Avenue, NW
Suite N-5655
Washington, DC 20210

      RE:    Request for Advisory Opinion Concerning a Limited Partnership and Its Sponsorship of a Single-Employer Self-Insured Group Health Plan

Dear Director Canary:

      The Law Office of Alexander Renfro ("Renfro") makes this request for consideration and possible issuance of an Advisory Opinion on behalf of our client, LP Management Services, LLC, a Georgia Limited Liability Company ("LPMS"). The primary business purpose of LPMS is to serve as General Partner of various Limited Partnerships and manage the day-to-day affairs of these Partnerships. At least one of these Limited Partnerships (the "LP") desires to sponsor an "employee welfare benefit plan" as defined under section 3(1) of the Employee Retirement Income Security Act ("ERISA"). The plan will be organized as a single-employer self-insured group health plan that will provide major medical health benefits to LP's eligible employees, along with LP's limited partners. On behalf of LP, Renfro hereby seeks confirmation from the Department of Labor, Employee Benefits Security Administration (the "Department") that:

(1) The single-employer self-insured group health plan sponsored by LP is an "employee welfare benefit plan" within the meaning of ERISA section 3(1).

(2) The limited partners participating in LP's single-employer self-insured group health plan are "participants" within the meaning of ERISA section 3(7).

(3) The single-employer self-insured group health plan sponsored by LP is governed by Title I of ERISA.

1

*The Law Office of Alexander Renfro*

**I.     Background**

    **A.  Statement of Facts Concerning Corporate Structure of LP**

LP is a Limited Partnership duly registered and formed in the State of Georgia. LP's Partnership Agreement appoints LPMS as General Partner and delegates day-to-day business management decisions to LPMS, including but not limited to the execution of rental agreements, employment contracts, distribution of revenue producing agreements, and grantor decisions to form a group health plan.  LP's Limited Partners ("LPartners") are individuals who have obtained a Limited Partnership Interest ("LPI") through the execution of a joinder agreement with LP.  LPMS, as General Partner, correspondingly counter-executes such agreements, files a resolution on the addition of a new LPartner, and updates LP's partnership information to include the addition of a new LPartner. LPartners participate in global management issues through periodic votes of all Partners, as well as contribute time and service to revenue-generating activities of LP.  Together, LPMS, as General Partner, and LPartners wholly control and operate LP.

LP's primary business purpose and main source of revenue is the capture, segregation, aggregation, and sale to third-party marketing firms of electronic data generated by LPartners who share such data with LP.  Participating LPartners install specific software which, among other things, tracks the capture of such data by other companies, such as Google or Facebook, and provides access of such data to LP.  LP then decides how such data is used and sold to third-party marketing firms, generating revenue.  LPartners control and manage the capture, segregation, aggregation, and sale of their own data, empowering LPartners in a manner not otherwise available to them when they utilize services over the Internet through their computers, phones, televisions, and other devices.

As discussed above, LPartners all gain status as a limited partner in LP by executing a joinder agreement, establishing each LPartner's rights.  These rights are subsequently exercised on a regular basis through votes on how aggregated data will be sold or used by LP as well as votes on other partnership matters.  Finally, through the sharing of data, LPartners are committing time and service to revenue-generating activity on behalf of LP.

LP also employs at least one common law employee to assist the partnership with administrative and/or revenue generating services.

    **B.  Statement of Facts Concerning LP's Single-Employer Self-Insured Group Health Plan**

In an effort to attract, retain, and motivate talent in service of LP's primary business purpose, LP will establish a single-employer self-insured group health plan (the "Plan").  Since this Plan is formed and sponsored only by LP – and not in concert with any other employer – the Plan is a single-employer self-insured group health plan.  LPMS, as the General Partner, serves as the Named Fiduciary and Plan Administrator of the Plan.

*The Law Office of Alexander Renfro*

The Plan has a number of third-party vendors which LPMS engages on behalf of LP to administer the Plan.  First, LPMS hires a consulting and benefits design firm for guidance and assistance with fulfilling plan requirements pursuant to the ERISA and related statutes.  Second, LPMS appoints a licensed and bonded Third Party Administrator ("TPA") to collect funds and allocate funds, adjudicate claims, manage claims' appeals, execute the payment of claims for benefits under the Plan, and perform other traditional services performed by a TPA.  Third, LPMS appoints a benefits administrator to assist its staff in managing eligibility data and plan participant customer service issues on an ongoing basis.  Fourth, LPMS creates a Trust to hold any plan assets related to the Plan.  Finally, LPMS obtains a reinsurance policy for the Plan. This reinsurance policy is of a comprehensive and specific nature, as described more fully below.

The terms of the Plan are outlined in a Plan Document.  This Plan Document contains information on the benefits provided by the Plan to Plan participants, eligibility information, instructions on claims for benefits, claims appeals information, coordination of benefits provisions, disclaimers concerning certain federal statutes, and other information.  With respect to eligibility, the Plan Document notes that both employees and partners are eligible to participate in the Plan.  As discussed above, at least one common law employee participates in the Plan, as well as a number of LPartners, although not all LPartners participate in the Plan.  LP will pay 100% of the premiums for coverage under the Plan for LP's employees.  LPartners will be 100% responsible for paying their own premiums for coverage under the Plan.  According to the enrollment procedures as outlined in the Plan Document, annual Open Enrollment periods, as well as Special Enrollment periods as required by law, are utilized to permit eligible plan participants to join the Plan.

The aforementioned third-party vendors service the Plan as their delegated duties require. For example, the TPA collects monthly premium payments from the Plan's participants.  The TPA allocates these funds appropriately, routing plan assets to the Trust (which is solely controlled by a Directed Trustee), paying vendors their fees, and ensuring premium payments are timely made to the reinsurance carrier underwriting the Plan's reinsurance policy.  The TPA withholds a certain amount of premium due to the reinsurance carrier covering the Plan in order to expedite payment of claims for benefits.  With respect to paying claims for benefits, in cases where the TPA has received and approved a claim, the TPA will access the plan assets held in Trust to pay said claim.  Should a claim require a payment in excess of the funds available to the TPA on an immediate basis, the TPA coordinates with the reinsurance carrier covering the Plan for transmission of additional funds to the TPA's claims-paying account.  Once received, the TPA will continue paying claims.

### C. Additional Plan Features

LP is sensitive to prospective concerns with respect to the solvency of its Plan as well as the need for credibility of its Named Fiduciary.  To that end, LP has obtained comprehensive and extremely well-funded layers of reinsurance policies, and LPMS – as General Partner and Named Fiduciary – has obtained a fiduciary liability policy.

3200 West End Avenue, Suite 500
Nashville, TN 37204
214-734-3330
alexander.renfro@gmail.com

*The Law Office of Alexander Renfro*

With respect to the primary reinsurance policy covering the Plan, coverage is obtained from first-dollar and to an unlimited degree per the terms of the reinsurance policy. This policy is supported by multiple layers of retrocessionary coverage without a risk corridor by retrocessionaires with an excess of $7,000,000,000 in assets to cover risk with respect to the Plan. LPMS requires the following features of any policy it obtains to cover the Plan now or in the future:

Any group health plan sponsored by LP, or by any other entity managed by LPMS and which offers ERISA plan participation to its eligible plan participants, including certain employees and partners, must first obtain Qualifying Reinsurance Coverage. "Qualifying Reinsurance Coverage" means excess/stop loss insurance, indemnity insurance for a self-insured plan or employee benefit trust, insurance for a self-insured plan or trust, or reinsurance coverage purchased from an excess/stop loss, indemnity, insurance, or reinsurance carrier that meets the following requirements:

- The carrier providing Qualifying Reinsurance Coverage must provide the following information to LPMS:

    o The name, address, and phone number of the carrier;
    o Statement(s) certifying compliance with all requirements described in below;
    o A statement of compliance with the reserve requirements described below;
    o A notification of any material changes to the Qualifying Reinsurance Coverage.

- The Qualifying Reinsurance Coverage:

    o May only be issued by a carrier which establishes and maintains retrocessionary coverage from one or more (re)insurer(s) with at least $100,000,000 in aggregate equity for any claims which the plan is unable to satisfy by reason of a solvency event affecting said carrier's ability to pay claims, to an unlimited degree;
    o Must note on any contract for coverage a definite starting or attachment point of such coverage which is conspicuous and clear to the plan member(s) prior to purchase of such coverage, and qualifying (re)insurance coverage issued on a non-stop loss (re)insurance basis must have a first-dollar starting point;
    o Must note on any contract for coverage an unlimited liability of the carrier issuing such coverage for benefits covered by such coverage which is conspicuous and clear to the plan member(s) prior to purchase of such coverage;
    o Must have been approved by one or more regulatory body or bodies duly authorized to license and regulate the business of insurance within the

4

*The Law Office of Alexander Renfro*

United States and/or a member of the National Association of Insurance Commissioners, for a minimum of twenty-four months, and been issued to at least one insured party for the direct and/or indirect coverage of health and/or medical benefits, and in force throughout said period;
- May only be issued by a carrier which establishes and maintains reserves with respect to covered benefits, in an amount recommended (or the mid-point of multiple recommendations) by an actuary certified by the American Academy of Actuaries, consisting of reserves sufficient for:

    - Unearned contributions;
    - Benefit liabilities which have been incurred, which have not been satisfied, and for which risk of loss has not yet been transferred, and for expected administrative costs with respect to such benefit liabilities;
    - Any other obligations of the plan; and
    - A margin of error and other fluctuations, taking into account the specific circumstances of the plan.

- May only be issued by a carrier which establishes and maintains additional reserves of at least $500,000 above the reserves noted above.

- Carriers issuing Qualifying Reinsurance Coverage may demonstrate compliance with the reserve requirements described above with alternative reserves in the form of a contract of indemnification, lien, bonding, (re)insurance, letter of credit, or security.

- Any business of insurance, including but not limited to the obtaining of Qualified Reinsurance Coverage, conducted in any State must comply with the insurance laws of said State, and obtain all required State approvals.

*The Law Office of Alexander Renfro*

**II.     Law and Analysis**

   **A.  Treatment of a Partner Under ERISA**

ERISA provides specific rules and regulations applicable to (1) an "employee welfare benefit plan," (2) "employees," and (3) "participants" that may participate an "employee welfare benefit plan."

An "employee welfare benefit plan" is defined as:[1]

"any plan, fund, or program…established or maintained by an employer…for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits…"

An "employee" is defined as:[2]

"an individual employed by an employer."

A "participant" is defined as:[3]

"any employee or former employee of an employer…who is or may become eligible to receive a benefit…from an employee benefit plan which covers employees of such employer."

On its face and without further context provided elsewhere in ERISA, it appears that a partner in a partnership is not an "employee" within the meaning of ERISA section 3(6).  Relying on the common law definition of an "employee," a partner also would not be considered an employee.[4]  If a partner is not considered an "employee" for ERISA purposes, a partner cannot be considered a "participant" in an ERISA-covered "employee welfare benefit plan."

DOL Reg. section 2510.3-3(b) confirms that, for limited purposes, a partner is not considered an "employee" for purposes of determining the existence of an "employee benefit plan," which includes an "employee welfare benefit plan."  DOL Reg. section 2510.3-3(b) further explains that a "plan without employees" is excluded from the requirements under Title I of ERISA (i.e., a plan covering partners is not considered an ERISA-covered plan).

---

[1] Section 3(1) of the Employee Income Retirement Security Act ("ERISA").

[2] ERISA section 3(6).

[3] ERISA section 3(7).

[4] In accordance with the Supreme Court's ruling in *Nationwide Mutual Insurance Company v. Darden,* the Department has found that the common law standard for determining employee status is whether someone is hired by an employer, with the employer having the "right to control and direct" the individual's work. [*See* DOL Information Letter (May 8, 2006); DOL Advisory Opinion 95-29A (Dec. 7, 1995); DOL Advisory Opinion 95-22A (Aug. 25, 1995)].

3200 West End Avenue, Suite 500
Nashville, TN 37204
214-734-3330
alexander.renfro@gmail.com

*The Law Office of Alexander Renfro*

### B. A Partner May Be a "Participant" In an ERISA-Covered Single-Employer Plan Alongside At Least One Common Law Employee

The Department, however, has concluded that if a partner participates in an employee benefit plan along with at least one common law employee, DOL Reg. section 2510.3-3 does *not* exclude this plan from being covered by Title I of ERISA.[5] Specifically, the Department has found that a plan covering partners (who are considered "working owners") as well as their non-owner employees clearly falls within ERISA's scope.[6] The Department explained that "[t]he definition of 'plans without employees' in DOL Reg. section 2510.3-3(b) simply defines a limited circumstance in which the only parties participating in a benefit arrangement are an individual owner/partner…and declines to deem the individual[], in that limited circumstance, as [an] employee[]…for purpose of the regulation."[7] The Department explains further that DOL Reg. section 2510.3-3(b) "does not apply, however, outside that limited context and, accordingly, does not prevent sole proprietors or other working owners – [including partners] – from being participants in broader benefit plan arrangements…"[8]

The conclusion that partners can participate in an ERISA-covered plan so long as the plan also covers at least one common law employee is consistent with the finding of the courts. For example, the Supreme Court in *Yates v. Hendon*[9] found that a plan covering both a "working owner" – including a partner in a partnership – and at least one common law employee is governed by ERISA.[10] In other words, in cases where a benefit plan covers both partners and common law employees, the plan will be covered by Title I of ERISA.[11]

The Fifth Circuit Court of Appeals, in *House v. American United Life Insurance Company*, also concluded that ERISA applies to a benefit arrangement that provided coverage to a firm's partners that also covered the firm's common law employees without reliance on whether said partner was a "working owner."[12] In *House*, a partnership established a plan that provided disability benefits to both employees of the partnership, as well as the partners. The partnership – as the employer of the employees – paid 100% of the premiums for the disability coverage for its employees and automatically enrolled them in the plan. The partners, on the other hand, were responsible for 100% of their own premium payments. The Circuit Court found that despite the differences in the manner in

---

[5] 83 Fed. Reg. 614, 621 (Jan. 5, 2018).

[6] *Id.*

[7] *Id.*; *see also*, 83 Fed. Reg. 28912, 28930 (June 21, 2018).

[8] *Id.*

[9] 41 U.S. 1 (2004).

[10] *Id.* at 9.

[11] *Id.*

[12] 499 F.3d 443 (5th Cir. 2007).

3200 West End Avenue, Suite 500
Nashville, TN 37204
214-734-3330
alexander.renfro@gmail.com

*The Law Office of Alexander Renfro*

which premiums were paid, the partnership established a comprehensive employee welfare benefit plan covering both partners and employees, thus creating a single-employer ERISA-covered plan.[13]

In our opinion, *House* is instructive because of its similarities to our facts described in Section I.B. above, where LPartners will be required to pay their own premiums for the self-insured group health plan coverage sponsored by LP, while LP will pay 100% of the premiums for eligible employees, who are automatically enrolled in the plan.  Based on the conclusion in *House*, the Supreme Court in *Yates*, and the Department's interpretations as set forth in proposed and final regulations, it is clear that LPartners may permissibly be considered "participants" in an ERISA-covered plan so long as at least one common law employee participates in the plan.

It is also clear that the single-employer self-insured group health plan sponsored by LP – acting in the capacity of an employer – to provide medical health benefits to LP's common law employees and limited partners is an "employee welfare benefit plan" within the meaning of ERISA section 3(1). As a result, because both LP's employees and LPartners may permissibly participate in this single-employer ERISA-covered "employee welfare benefit plan," the plan would be governed by Title I of ERISA.

### C. A Partner Has Dual Status as an "Employer" and "Employee" and Thus May Be Considered a "Participant" In an ERISA-Covered Plan

In line with the reasoning discussed above, the Department has concluded that a partner may have dual status as an "employer" and an "employee," and thus, permissibly be considered a "participant" in an ERISA-covered plan.[14]  Specifically, the Department opined that ERISA section 401(a)(2), ERISA section 403(b)(3)(A), ERISA section 408, ERISA section 4001(b)(1), ERISA section 4021(b)(9), and ERISA section 4022(b)(5)(A) all serve as indications that "working owners" – including partners – may be considered "participants" for purposes of ERISA coverage.[15]  The Department has found that there is a clear Congressional design to include "working owners" – including partners – within the definition of "participant" for purposes of Title I of ERISA.[16]

Based on the foregoing, it is clear that LPartners may permissibly be considered "participants" in LP's single-employer self-insured group plan.  In addition, because the Plan is considered an "employee welfare benefit plan" within ERISA section 3(1), the Plan would be governed by Title I of ERISA.

### D. For Purposes of ERISA, a Partner Should Be Defined as an Individual Who Commits Time to and Performs Services on Behalf of the Partnership

---

[13] *Id.* at 451-452.

[14] DOL Adv. Op. 99-04A (Feb. 4, 1999).

[15] *Id.*; *see also*, 83 Fed. Reg. at 621 (Jan. 5, 2018) and 83 Fed. Reg. at 28930 (June 21, 2018).

[16] *Id.*

3200 West End Avenue, Suite 500
Nashville, TN 37204
214-734-3330
alexander.renfro@gmail.com

*The Law Office of Alexander Renfro*

The fact that a partner is considered a "working owner" must not be confused with the definition of a "working owner" under the Department's final association health plan (AHP) regulations.[17]  Under the final AHP regulations, a "working owner" – which in the case of the final AHP regulations is a self-employed individual with no employees – means an individual who (1) has an ownership right in a "trade or business," regardless of whether the "trade or business" is incorporated or unincorporated, (2) earns wages or self-employment income from the "trade or business," and (3) works at least 20 hours a week (or 80 hours per month) providing personal services to the "trade or business" *or* earns income from the "trade or business" that at least equals the "working owner's" cost of the health coverage.[18]

As discussed above, the Department and the Supreme Court have concluded that a "working owner" may also include a partner in a partnership.  Although the term "partner" is not specifically defined in ERISA, ERISA section 732(d) contemplates a partner participating in a group health plan. Section 732(d) is relevant in cases where partners are the *only* participants in a group health plan, which would cause the plan to fall outside of Title I of ERISA (as required under DOL Reg. section 2510.3-3(b)).  However, ERISA section 732(d) is also guiding on how a partner should be defined for purposes of participating in a group health plan, regardless of whether the plan is governed by Title I of ERISA or not.  Stated differently, ERISA section 732(d)'s reference to and description of a partner serves to define a partner participating in a "plan without employees," as well as a partner who may permissibly participate in an ERISA-covered plan alongside at least one common law employee.

The regulations implementing ERISA 732(d) provide that for purposes of treating a partner as an "employee" – and thus a "participant" in a group health plan subject to the requirements under Part 7 of ERISA – the "the term employee includes any bona fide partner."[19]  The implementing regulations go on to state that "whether or not an individual is a bona fide partner is determined based on all the relevant facts and circumstances, including whether the individual *performs services on behalf of the partnership*."[20]

Although a "bona fide partner" is not further defined in ERISA or its implementing regulations, the term "bona fide partner" can be found elsewhere in federal law, specifically in guidance from the Internal Revenue Service ("IRS").[21]  According to the IRS, a bona fide partner is an individual with rights in a partnership, who exercises said rights, and who *commits time and service to the partnership*.[22]  The consistency between the IRS's definition of a bona fide partner and the manner in

---

[17] *See* 83 Fed. Reg. 28912 et. seq. (June 21, 2018).

[18] DOL Reg. section 2510.3-5(e)(2).

[19] DOL Reg. section 2590.732(d)(2).

[20] *Id.*

[21] *See* Rev. Rul. 69-184.

[22] *Id.*

3200 West End Avenue, Suite 500
Nashville, TN 37204
214-734-3330
alexander.renfro@gmail.com

*The Law Office of Alexander Renfro*

which the Department described a bona fide partner in ERISA section 732(d) implementing regulations supports the interpretation that for purposes of ERISA, a partner should be defined as "an individual who commits time to and performs services on behalf of the partnership."

In our opinion, LPartners satisfy the definition of a "bona fide partner." LPartners have actual rights in LP as dictated in both LP's Partnership Agreement and the joinder to said agreement signed by each LPartner. LPartners regularly exercise these rights in periodic votes on partnership business. Finally, LPartners contribute time and energy to LP by sharing data and assisting in LP's primary business purpose and revenue generation activity. The time and services contributed by LPartners comprise the sole means of revenue generation of LP. In other words, without this activity, LP would not earn revenue or survive as an entity. By these acts, LPartners meet both the IRS's and the Department's standards to qualify as bona fide partners.

### III.     Request for Determination

Based on the foregoing, Renfro respectfully asks that the Department to confirm that:

(1) The single-employer self-insured group health plan sponsored by LP is an "employee welfare benefit plan" within the meaning of ERISA section 3(1).

(2) LPartners participating in LP's single-employer self-insured group health plan are "participants" within the meaning of ERISA section 3(7).

(3) The single-employer self-insured group health plan sponsored by LP is governed by Title I of ERISA.

Thank you in advance for considering this request. Please do not hesitate to contact me with any questions, or with any request for additional information.

Respectfully submitted,

*Alexander Renfro*

ALEXANDER T. RENFRO, JD, LLM

3200 West End Avenue, Suite 500
Nashville, TN 37204
214-734-3330
alexander.renfro@gmail.com